UNITED STATES DISTRICT COURT
SUMMONS ISSUED
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
LEROY DAVIS,

                   Plaintiff,

    -against-

THE CITY OF NEW YORK, JAVIER VÉLEZ,
JAMES LUKESON, AND GARY CALHOUN,

                  Defendants.
-------------------------------------------------------X

**COMPLAINT**

**PLAINTIFF DEMANDS
A TRIAL BY JURY**

CV 12 - 1219
WEINSTEIN, J.
ORENSTEIN, M.J.

FILED
CLERK
2012 MAR 13 AM 11: 05
U.S. DISTRICT COURT
EASTERN DISTRICT
OF NEW YORK

    Plaintiff, **LEROY DAVIS**, by his attorney, James Concemore Neville, as and for his complaint, hereby alleges as follows, upon information and belief:

## PARTIES, VENUE, AND JURISDICTION

    1.   At all times hereinafter mentioned, Plaintiff, **LEROY DAVIS**, was an adult male resident of Kings County, within the State of New York.

    2.   At all relevant times hereinafter mentioned, Defendant, The City of New York ("New York City"), was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York, and acts by and through its agencies, employees, and agents, including, but not limited to, the New York City Police Department ("NYPD"), and employees of the New York City Police Department.

    3.   At all relevant times hereinafter mentioned, **Defendant Javier Vélez**, Tax Registry Number 935924, was an adult male, employed by The City of New York as a member of the New York City Police Department. Defendant **Javier Vélez** is sued herein in his official and individual capacities.

1

4.      At all relevant times hereinafter mentioned, **Defendant James Lukeson**, Tax Registry Number 935216, was an adult male, employed by The City of New York as a member of the New York City Police Department. Defendant **James Lukeson** is sued herein in his official and individual capacities.

5.      At all relevant times hereinafter mentioned, **Defendant Gary Calhoun**, Tax Registry Number 903537, was an adult male, employed by The City of New York as a member of the New York City Police Department. Defendant **Gary Calhoun** is sued herein in his official and individual capacities.

6.      This Honorable Court has jurisdiction of this action pursuant to Title 28 United States Code §§ 1331, 1343, and 1367, and also pursuant to Title 42 United States Code § 1983.

7.      Venue is properly laid, pursuant to Title 28 United States Code § 1391, et seq., in the Eastern District of New York, where the Plaintiff and Defendant City of New York reside, and where the majority of the actions complained of herein occurred.

8.      Plaintiff **Leroy Davis** timely served a Notice of Claim on the municipal defendant City of New York, and the Plaintiff **Leroy Davis** complied with all conditions precedent to commencing an action under New York State law.

. 9.      At least thirty (30) days have elapsed since Plaintiff **Leroy Davis** served his Notice of Claim, and adjustment and payment thereof has been neglected or refused.

10.      That the within action has been initiated within one year and ninety days of the occurrence of the events of which Plaintiff **Leroy Davis** complains.

2

## RELEVANT FACTS

11.     At all times relevant times concerning the factual basis for Plaintiff's Complaint herein, Plaintiff **Leroy Davis** was residing at 642 Chauncey Street, Brooklyn, New York 11207, the home of Ms. Mary Jackson.

12.     Plaintiff **Leroy Davis** had been living at the above-mentioned address, 642 Chauncey Street, Brooklyn, New York since approximately April 27, 2009.

13.     Plaintiff **Leroy Davis** resided in a small room on the top floor of Ms. Jackson's home located at 642 Chauncey Street, Brooklyn, New York.

14.     The Plaintiff **Leroy Davis** was a border at the address of 642 Chauncey Street, and various other individuals lived at that location, including Ms. Jackson, her sister, and at least one other border.

15.     Ms. Jackson's residence at 642 Chauncey Street was also a location visited and occupied by numerous extended family members of Ms. Jackson, including grandchildren and great-grandchildren.

16.     At the time that Plaintiff **Leroy Davis** resided in Ms. Jackson's home on Chauncey Street, Plaintiff **Leroy Davis,** who had been released from New York State Prison, was being supervised by the New York State Department of Parole.

17.     On October 2, 2009 at approximately 1:10 a.m., Plaintiff **Leroy Davis** was leaving his residence at 642 Chauncey Street by exiting the front door of the home.

18.     On the aforementioned date and time, Plaintiff **Leroy Davis,** possessed various keys to his home, including a key to the front door, main entrance to the residence, and another

3

key used to lock and unlock a wrought iron gate door located at the sidewalk-level, front entrance of 642 Chauncey Street. At this time Plaintiff **Leroy Davis**, as he exited 642 Chauncey Street, also possessed a wallet, which wallet contained a social security card and a photo identification card.

19.     At no time whatsoever did Plaintiff have possession of a gun or illegal drugs on his person while walking out of his house, or anywhere in his room at 642 Chauncey Street.

20.     At the aforementioned date and time, Plaintiff **Leroy Davis**, following his exiting the Chauncey Street residence and after facing and locking with his key the wrought iron gate door, placed his keys to the residence in his pocket and continued to exit his residence.

21.     At the aforementioned date and time, as Plaintiff **Leroy Davis** turned and faced Chauncey Street to continue on his way, Plaintiff **Leroy Davis** saw three people jump out of a car who commanded that Plaintiff **Leroy Davis** "get on the gate." These people were the three Defendants herein. The Defendants were in plainclothes and on duty for the NYPD.

22.     At the aforementioned date and time, Plaintiff **Leroy Davis** asked these individuals who had exited a vehicle and commanded him to get on the gate what was going on, why was he being stopped. Plaintiff **Leroy Davis** also stated to these same individuals who had detained him that Plaintiff's "grandmother lives here."

23.     After making the above-statement to the three Defendants who had stopped him and instructed him to "get on the gate," the Plaintiff **Leroy Davis** was told to "be quiet."

24.     Immediately after telling the Plaintiff to "be quiet," one of the Defendants reached into Plaintiff's pocket to retrieve Plaintiff's residence keys and the Plaintiff's wallet, which wallet contained one social security card, and one piece of photo identification, both corresponding to Plaintiff **Leroy Davis's** correct name. This Defendant used the Plaintiff's keys to first open the front sidewalk-level wrought iron gate, and then walked up the front stairs of

4

642 Chauncey Street, using the Plaintiff's residence key to open the front door of the residence at 642 Chauncey Street. This Defendant then entered the Plaintiff's residence.

25. Plaintiff noticed, as he was detained outside on the sidewalk and near the entrance to his residence, that more than one person went in and out of the Plaintiff's residence. After some time, other police arrived and entered and exited the Plaintiff's residence.

26. After five to ten minutes, the Defendant who had entered the Plaintiff's residence emerged from the Plaintiff's residence and said to the officer that was guarding Plaintiff to "put handcuffs on him."

27. The Defendants did not seek permission to enter the Plaintiff's residence at any time, nor could the Defendants have believed that consent been given. There were no exigent circumstances to justify entry into the residence, nor did the Defendants possess any warrant to justify the entry into the residence. The entry into the Plaintiff's residence was illegal.

28. At the time that the plainclothes officers place handcuffs on the Plaintiff, the Plaintiff did not know why he was being arrested and having handcuffs placed on him.

29. The Plaintiff was taken to the 83rd Precinct of the New York City Police Department.

30. Upon arrival to the 83rd Precinct, the Plaintiff was searched and then placed in a jail cell.

31. While detained at the 83rd Precinct, Plaintiff was still not aware of the charges allegedly supporting his arrest.

32. After being held at the 83rd Precinct, the Plaintiff was transported to be processed and brought before a judge. It was not until the Plaintiff spoke to a public defender that he learned he had been arrested for possession of a gun and a quantity of crack cocaine.

Upon hearing that he had been arrested for gun and drug possession, the Plaintiff became upset and distraught. The Plaintiff had no idea that the police were claiming that Plaintiff was found in possession of a gun and drugs.

33.     The Defendant officers had fabricated a story that the Plaintiff had been in possession of a bag that contained a gun and some drugs, along with uneaten chicken. The Defendant officers lied and stated that the Plaintiff, in possession of the bag containing the gun and drugs, dropped and abandoned the bag upon seeing the unmarked police car drive down Chauncey Street. This story was a complete fabrication of the Defendant police officers, uttered to justify the false arrest of the Plaintiff.

34.     The Defendant officers knew that the statements they were making were false and fictitious. The Defendants used their false statements to justify an otherwise unlawful and corrupt course of conduct. The Defendants continually perpetrated a fraud on every judge and prosecutor that they came into contact with, always with the knowledge that they were making false allegations against the Plaintiff.

35.     The Defendant officers persisted in their lies and fabrications, and caused the Kings County District Attorney's Office to charge the Plaintiff with felony possession of a weapon and felony possession of crack cocaine. Plaintiff has vehemently denied that he was ever in possession of the contraband.

36.     After being presented in Criminal Court, Kings County for a bail hearing, Plaintiff was remanded to Rikers Island. Some days later, the Plaintiff was released on bond. On or about November 12, 2009, federal authorities arrested the Plaintiff for the same alleged gun and drug possession, and New York State charges were dropped.

37.     The Defendant officers committed perjury in the grand jury and caused the Plaintiff to be indicted on the above-mentioned federal charges, as the story the Defendants told in the grand jury was a complete fabrication and untrue, and the Defendants knew their testimony was false.

6

38.     The Plaintiff appeared before a federal magistrate on or about November 12, 2009, and was permanently detained.

39.     The Plaintiff was indicted by a federal grand jury that based its decision to indict the Plaintiff on the false testimony of the Defendants. In Eastern District of New York Indictment Number 09 Cr. 829 (CBA), the Plaintiff was charged as a felon in possession of a weapon, with possession of a weapon in furtherance of a drug offense, and with possession of crack cocaine with intent to distribute.

40.     The Plaintiff pleaded not guilty, and litigated his case throughout. The Plaintiff refused to accept any guilty plea offers from the government.

41.     The Defendants, especially Defendant Javier Vélez, falsely represented the facts and circumstances of the Plaintiff's detention and arrest to prosecutors, first at the Kings County District Attorney's Office, and then to Federal authorities at the Bureau of Alcohol, Tobacco, and Firearms, to the United States Attorney's Office, Eastern District of New York.

42.     The individual defendant officers made these false statements to drive the prosecution. But for the false allegations of the Defendants, the Plaintiff would have never been prosecuted.

43.     Furthermore, at a hearing and trial before the Hon. Carol Bagley Amon, United States District Judge, the Defendants Vélez and Lukeson, falsely testified as to the facts and circumstances of the Plaintiff's seizure and arrest. Defendant Calhoun was part of the team of undercover officers who falsely arrested the Plaintiff, and Defendants Vélez and Lukeson lied and testified falsely to attempt to justify an illegal and unlawful arrest and detention of the Plaintiff for charges that were unfounded. Defendants Vélez and Lukeson also perjured themselves before the Hon. Carol Bagley Amon, U.S.D.J. at the pre-trial hearing, and at the jury trial of the Plaintiff. Defendants Vélez and Lukeson knew they were uttering false testimony when they swore under oath to tell the truth.

7

44.     The Plaintiff never possessed, at any time, any weapon or drugs, and the Defendant Police Officers perjured themselves by persisting in these false allegations, with great harm and consequence to the Plaintiff, as he suffered while in custody for thirteen months, facing extremely serious federal drug and weapons charges, charges that carried the possibility of life in prison.

45.     Had the Plaintiff been convicted of these serious federal charges based on the false testimony of the Defendants, the Plaintiff likely would have been sentenced to at least 20 years in federal prison.

46.     The Plaintiff was in custody from November 12, 2009, until December 17, 2010, on which day the Plaintiff was acquitted of all three federal counts on Indictment Number 09 Cr. 829 (CBA) by a federal jury. After the acquittal, the Plaintiff was released from custody.

47.     At no time did there exist sufficient cause to seize or arrest the Plaintiff, nor could the Defendants have reasonably believed that such cause existed. The Defendants knew they were lying at all times.

48.     At no time did any one of the Defendants, especially Defendant Calhoun, the supervising officer at the scene of the Plaintiff's unlawful seizure and arrest, take any steps to intervene in, prevent, or otherwise limit the heretofore misconduct engaged in against the Plaintiff.

49.     The individual Defendants Vélez and Lukeson intentionally and deliberately gave false statements at the grand jury, at a pre-trial hearing and trial of the Plaintiff, and all three Defendants failed to file accurate or correct statements, and superiors at the New York City Police Department failed to report the unlawful conduct of the Defendants who engaged in such misconduct described above, as required as members of the New York City Police Department.

50.     The Plaintiff was never in possession of any drugs or a gun. The prosecution of the Plaintiff, both in New York State Court and then in the United States Court, Eastern District of New York was based on the false allegations of the Defendants.

51.     How the Defendants came to possess a gun and some crack cocaine that the Defendants falsely charged the Plaintiff with, is unknown. Only the Defendants can say where the contraband presented in court as false evidence against the Plaintiff came from, but the Plaintiff never possessed a gun nor drugs at any time, not on his person, nor in his room at 642 Chauncey Street.

52.     That at all times relevant herein, the Defendants were on duty and the Defendants were all acting within the scope of their employment, and the Defendants' unlawful acts were committed in furtherance of the City of New York's interests, and without legal justification or excuse.

## FIRST CAUSE OF ACTION

Plaintiff repeats the allegations contained in paragraphs "1" through "52" above as though stated fully herein.

53.     Defendants willfully and intentionally seized, searched, detained, and arrested Plaintiff without probable cause, and without a reasonable basis to believe such cause existed.

54.     By so doing, the individual Defendants, individually and collectively, subjected the plaintiff to false arrest and imprisonment, unlawful searches of person and property, and denial

9

of due process, and denial of a fair trial, and thereby violated, conspired to violate, and aided and abetted in the violation of Plaintiff's rights under the Fourth and Fourteenth Amendments of the United States Constitution.

55.    The individual Defendants willfully and intentionally subjected the Plaintiff **Leroy Davis** to and unlawful and corrupt criminal process through the making of false or materially misleading statements and without probable cause to believe that this Plaintiff could be successfully prosecuted, and gave false and misleading testimony and abused the criminal process and Constitutional rights of the Plaintiff by committing perjury and making false statements with the intention of obtaining a conviction for crimes that the Plaintiff did not commit. The Defendants engaged in conduct of this nature without a reasonable basis to believe that such conduct was appropriate, reasonable, lawful or necessary.

56.    By engaging in the above-described illegal, unlawful and unconstitutional conduct, the individual Defendants Vélez, Lukeson, and Calhoun, individually and collectively, subjected the Plaintiff to false arrest and imprisonment, unlawful searches of person and property, denial of due process and a fair trial, malicious prosecution and malicious use and abuse of process, and thereby violated, conspired to violate, and aided and abetted in the violation of the Plaintiff **Leroy Davis'** rights under the Fourth and Fourteenth Amendments of the United States Constitution.

57.    By reason thereof, the individual Defendants have violated Title 42 United States Code §1983, and caused Plaintiff to suffer emotional injuries, mental anguish, unlawful incarceration, the deprivation of liberty, and the loss of his constitutional rights.

## SECOND CAUSE OF ACTION

58.     Plaintiff repeats the allegations contained in paragraphs "1" through "57" above as though
stated fully herein.

59.     Defendant City of New York was responsible for ensuring that reasonable and
appropriate levels of supervision were in place within and/or over the New York City Police
Department ("NYPD").

60.     Defendant Municipality New York City had actual or constructive knowledge that there
was inadequate supervision over and/or within the NYPD with respect to its members' abuse of
their authority, abuse of arrest powers, and other blatant violations of the United States
Constitution and the established rules and regulations of the NYPD.  Despite ample notice of
inadequate supervision, Defendant Municipality New York City took no steps to ensure that
reasonable and appropriate levels of supervision would be put into place to reasonably ensure
that NYPD members would execute their duties in a lawful and proper manner, including, but
not limited to,  the use of their authority as law enforcement officers with respect to the general
public, including, and specifically, the Plaintiff herein.

61.     The Defendant City of New York deliberately and intentionally chose not to take action
to correct the chronic, systemic, and institutional misuse and abuse of police authority by its
NYPD employees, and thereby deliberately and  intentionally adopted, condoned, and otherwise
created, through deliberate inaction and negligent supervision, an NYPD policy, practice, and

11

custom of utilizing illegal and impermissible searches, arrests, and detentions, and the

manufacturing of evidence, in the ordinary course of NYPD business in flagrant disregard of the

state and federal constitutions, as well as the Patrol Guide, up to and beyond the Plaintiff's arrest.

62.    All of the acts and omissions by the individual Defendants described above were carried

out pursuant to overlapping policies and practices of the municipal Defendant, The City of New

York. The individual Defendants Vélez, Lukeson, and Calhoun, in their capacities as New York

City police officers, acted pursuant to customs, policies, usages, practices, procedures and rules

of the City of New York and the NYPD;  all three individual Defendants acted under the direct

supervision of higher-ranking officers of the NYPD.

63.    The aforementioned customs, practices, procedures, and rules of the City and the NYPD

include, but are not limited to, the following unconstitutional practices:

        a.     Failing to supervise, train, instruct and discipline police officers
                and encouraging their misconduct;

        b.     Discouraging police officers from reporting the corrupt or unlawful
                acts of other officers;

        c.     Retaliating against officers who report police misconduct; and

        d.     Failing to intervene to prevent the above-mentioned illegal and
                unlawful practices when such intervention should reasonably
                follow any misconduct, especially when said misconduct was
                known to supervising and policy-making officials.

64. The existence of the aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct by New York City police officers, as documented in the following, non-exhaustive list of civil actions:

A. *Thompson v. City of New York*, 10-CV-3603 (ARR) (SMG) (E.D.N.Y.)

B. *Lotorto v. City of New York*, 10-CV-1223 (ILG) (JMA) (E.D.N.Y.);

C. *Zabala v. City of New York*, 37711/2010 (Sup. Ct., Kings Co.);

D. *Ashe v. City of New York*, 09-CV-9696 (GBD) (THK) (S.D.N.Y.);

E. *Long v. City of New York*, 09-CV-9216 (AKH) (S.D.N.Y.);

F. *Moise v. City of New York*, 09-CV-9855 (DC) (JLC) (S.D.N.Y.)

G. *Taylor-Mickens v. City of New York*, 09-CV-7923 (RWS) (SD.N.Y.);

H. *Carmody v. City of New York*, 05-CV-8084 (HB), 2006 U.S. Dist. LEXIS 83207;

I. *McMillan v. City of New York*, 04-CV-3990 (FB) (RML) (E.D.N.Y.);

J. *Avent v. City of New York*, 04-CV-2451 (CBA) (CLP)

(E.D.N.Y.):

K. *Smith v. City of New York*, 04-CV-1045(RRM) (JMA)(E.D.N.Y.);

L. *Powers v. City of New York*, 04-CV-2246 (NGG) (E.D.N.Y.);

M. *Dotson v. City of New York*, 03-CV-2136 (RMB) (S.D.N.Y.);

N. *Nonnemann v. City of New York*, 02-CV-I0131 (JSR) (AJP) (S.D.N.Y.);

O. *Richardson v. City of New York*, 02-CV-3651 (JG) (CLP) (E.D.N.Y.);

P. *Barry v. New York City Police Department*, 01-CV-10627 (CBM) (S.D.N.Y.);

Q. *Walton v. Safir*, 99-CV-4430 (AKH) (S.D.N.Y.);

R. *White-Ruiz v. The City of New York*, 93-CV-7233 (DLC) (MHD) (S.D.N.Y.);

S. *Ariza v. City of New York*, 93-CV-5287 (CPS) (E.D.N.Y.);

13

65.        In an Order dated November 25, 2009, in *Colon v. City of New York*, 09-

CV-0008 (E.D.N.Y.), the Hon. Jack B. Weinstein stated:

> "Informal inquiry by the court and among the judges of this court, as well as
> knowledge of cases in other federal and state courts, has revealed anecdotal
> evidence of repeated, widespread falsification by arresting police officers of the
> New York City Police Department. Despite numerous inquiries by commissions
> and strong reported efforts by the present administration -- through selection of
> candidates for the police force stressing academic and other qualifications, serious
> training to avoid constitutional violations, and strong disciplinary action within
> the department -- there is some evidence of an attitude among officers that is
> sufficiently widespread to constitute a custom or policy by the city approving
> illegal conduct of the kind now charged."

66.        Furthermore, more than half the time that the Civilian Complaint Review Board refers

substantiated complaints against officers to the NYPD for disciplinary action, the NYPD either

simply issues a verbal warning or drops the charges altogether.

67.        It is therefore clear that the municipal Defendant City of New York has not only

tolerated, but actively fostered a lawless atmosphere within the NYPD, and that the City of New

York has been deliberately indifferent to the risk that the inadequate level of supervision of New

York City Police officers would lead to the violation of individuals' constitutional rights in

general, and caused the violation of plaintiff's rights in particular herein.

68.        By reason thereof, Defendant Municipality of the City of New York and the three

individual Defendants Vélez, Lukeson, and Calhoun have violated Title 42 U.S.C. §1983 and

caused the Plaintiff to suffer emotional injuries, mental anguish, incarceration the deprivation of

liberty, and the loss of the Plaintiff **Leroy Davis'** constitutional rights.

14

## THIRD CAUSE OF ACTION

69.     Plaintiff repeats the allegations contained in paragraphs "1" through "68 above as though stated fully herein.

70.     At no time did the Defendants have any legal basis for arresting or imprisoning Plaintiff **Leroy Davis**, nor by the Defendants having commenced and perpetuated the unlawful criminal process, including, but not limited to a full federal criminal trial and 13 months illegal and unlawful incarceration against the Plaintiff **Leroy Davis**, nor was there any reasonable basis to believe that said conduct set forth herein was lawful, reasonable, or otherwise appropriate. The Defendants had no basis to arrest Plaintiff, imprisoning, or pursuing the prosecution of the Plaintiff.

71.     The Defendants are therefore liable to Plaintiff for his false imprisonment and malicious prosecution.

72.     By reason thereof, Defendants have caused Plaintiff to suffer emotional injuries, mental anguish, and the deprivation of his liberty due to unlawful incarceration.

## FOURTH CAUSE OF ACTION

73.     Plaintiff repeats the allegations contained in paragraphs "1" through "72" above as though stated fully herein.

74.     Defendants willfully and intentionally seized, arrested, and imprisoned plaintiff without cause, and without a reasonable basis to believe such cause existed, and in so doing, violated, conspired to violate, and aided and abetted in the violation of plaintiff's rights under Article 1, §§11, 12 of the Constitution of the State of New York.

15

75.    Defendants' violation of plaintiff's state constitutional rights was knowingly undertaken with the intent to deny the plaintiff her right to full and equal benefit of the laws of the State of New York.

76.    By reason thereof, defendants have caused plaintiff to suffer emotional and physical injuries, mental anguish, and the loss of her constitutional rights.

## DEMAND FOR A JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, Plaintiff **Leroy Davis** hereby demands a jury trial of all issues capable of being determined by a jury.

WHEREFORE, the Plaintiff **Leroy Davis** demands judgment against all the Defendants jointly and severally as follows:

1.    on the causes of action one through four, actual and punitive damages in an amount to be determined at trial;
2.    statutory attorney's fees pursuant to, *inter alia*, 42 U.S.C. §1988 and New York common law, disbursements, and costs of the action; and
3.    such other relief as the Court deems just and proper.

Dated: Port Washington, New York
       March 12, 2012

By:

James Concemore Neville (JN-2128)

Law Office of James C. Neville
14 Vanderventer Avenue, Suite 115
Port Washington, New York 11050
Telephone:  (516) 883-5905
Facsimile:  (516) 883-9508
E-Mail:    jcneville@optonline.net

16