FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★ DEC 0 4 2013 ☆

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

LEROY DAVIS,

               Plaintiff,

    – against –

CITY OF NEW YORK, JAVIER VELEZ,
JAMES LUKESON, and GARY CALHOUN,

            Defendants.

12-CV-1219

ORDER ON MOTIONS *IN LIMINE*
AND SCHEDULING ORDER

**JACK B. WEINSTEIN, Senior United States District Judge:**

**Appearances:**

Lumer & Neville, New York, NY, by James C. Neville and Michael B. Lumer, for Plaintiff.

New York City Law Department, New York, NY, by Elissa Beth Jacobs, for Defendants.

I.     Facts ........................................................................................... 1

III.   Law ............................................................................................. 2

III.   Application of Law to Facts ........................................................ 3

IV.   Evidentiary Issues ...................................................................... 5

V.    Trial ............................................................................................ 7

**I.    Facts**

    Leroy Davis—now plaintiff in this civil case—was arrested by three New York City police officers on October 2, 2009. The officers maintain that they made the arrest after observing Davis suspiciously discard a black plastic bag, later discovered to contain a gun and crack cocaine, on a public sidewalk.

1

Plaintiff disputes this account. He denies possession of any of these objects, claiming that the gun and cocaine were discovered during an unauthorized search of his nearby residence. Rather, he suggests, the gun and cocaine belonged to another resident, Terrell Norman—or, perhaps, they were planted by the police officers, now defendants.

Davis was promptly arraigned in state court on multiple counts of criminal possession of a controlled substance and criminal possession of a weapon. He was held in City jail at Rikers Island for several days before being released on bond. The state charges remained pending until April 1, 2010, when, after several court appearances, they were dismissed.

While the state charges were open, federal authorities indicted Davis on three counts— felon in possession of a weapon; possession of a weapon in furtherance of a drug offense; and possession of crack cocaine with intent to distribute—based on the same reports of the arresting officers.

Arraignment of Davis took place in federal court on November 12, 2009. Bail was denied. He remained in federal custody for thirteen months until he was acquitted by a federal jury on December 17, 2010.

Davis sues the three police officers for wrongful arrest and malicious prosecution. *See* 42 U.S.C. § 1983.

## II.   Law

As a threshold matter, the defendants contend that "[g]iven these circumstances, none of the defendants. . . can be liable for damages suffered by plaintiff as a result of the federal prosecution." *See* Defs.' Trial Br., ECF No. 64, *2. Their theory: "The independent discretionary actions of the U.S. Attorney's office served to break any causal connection between defendants [City employees] and the [federal] prosecution commenced against plaintiff." *Id.* at *3.

2

In a federal civil rights case, New York City police officers may be liable for damages suffered by a plaintiff during the period when he was under either state or federal indictment, or both. First, even if a jury were to conclude that the defendants played no role in "importuning the [*federal*] authorities to act," *see Manganiello v. City of New York*, 612 F.3d 159, 163 (2d Cir. 2010)—a highly questionable view, if Davis's account is credited—Plaintiff may support a malicious prosecution claim predicated on the period during which he faced *state* criminal charges. This result follows even if the plaintiff was held in state custody only briefly during this period. *See Albright v. Oliver*, 510 U.S. 266, 277-81 (1994) (Ginsburg, J., concurring) (explaining Fourth Amendment malicious prosecution claim may lie even where the accused is released on bond during pendency of criminal proceedings).

Defendants reason that in the present case the "independent judgment" of the grand jury or the Assistant United States Attorney attenuated to the vanishing point their role in "causing" or "procuring" the plaintiff's prosecution in federal court. The Court of Appeals for the Second Circuit has rejected defendant's argument, explaining that previous cases alluding to an "attenuation" defense "merely acknowledge[] that a complaining *layperson* might not be responsible for a prosecution if prosecutors go forward based on independent, untainted evidence. As a result, it would not appear that [this principle] has *any* application where a police officer is alleged to have maliciously misled a prosecutor. . . . " *Cameron v. City of New York*, 598 F.3d 50, 63 (2d Cir. 2010) (emphasis in original).

## III. Application of Law to Facts

Even if a more demanding causation standard governs this unusual case—because it was allegedly a federal prosecutor and grand jury, rather than a state prosecutor, who were misled— there is ample evidence from which a jury could conclude that the defendants "played an active

role in the [federal] prosecution" of the plaintiff. *See Rohman v. New York City Transit Authority (NYCTA)*, 215 F.3d 208, 217 (2d Cir. 2000) (discussing "initiation" element of malicious prosecution claim brought against non-police official). It can be argued that malicious misleading of both the state and federal prosecutors was by witnesses—here City police officers—acting under color of state authority.

Close collaboration between state and federal authorities in criminal matters is now commonplace and, generally speaking, laudable. *See, generally,* Essay, *Coordination of State and Federal Judicial Systems*, 57 ST. JOHN'S L. REV. 1, 22-28 (1982) (urging increased state-federal cooperation in criminal justice matters); *see also* Essay, *The Role of Judges in a Government Of, By, and For the People: Notes for the Fifty-Eighth Cardozo Lecture*, 30 Cardozo L. Rev. 8, n.2 ("So far as most lay people are concerned, the state and federal systems are one judicial establishment with many courts.").

Here, although none of the three defendants signed the federal criminal complaint against the plaintiff, "the source of [the] deponent's information and the grounds for his belief" included "reviews of records [of] the NYPD [and] conversations with NYPD officers." *See United States v. Davis*, 09-CR-0829, ECF No. 1, Aff. in Supp. of Crim. Compl., *2. Each of the three defendants is alleged to have subsequently testified falsely against the plaintiff during the federal criminal trial. Should a jury credit the plaintiff's version of events, defendants' wrongdoing could suffice to satisfy the initiation or continuation element of a malicious prosecution claim. *See Manganiello*, 612 F.3d at 163.

Because the plaintiff's section 1983 claims will hinge on whose account the jury finds most credible, reference to the earlier criminal proceedings must be kept to a minimum if the civil jury here is to exercise its judgment independently. It is important to keep from this civil

4

jury the credibility determinations made by the federal criminal petty jury and the Assistant United States Attorney who prosecuted the case. *See United States v. Forrester*, 60 F.3d 52, 63 (2d Cir. 1995) ("As a matter of law, the credibility of witnesses is exclusively for the determination by the jury, and witnesses may not opine as to the credibility of the testimony of other witnesses at trial."). The parties in the two trials are different—there, the federal government and Davis; here, Davis and three New York City police officers. The roles are reversed—the plaintiff here was the defendant there. The nature of examinations and cross-examinations and the parties' motives and strategy may be different. The burden on Davis was less in the criminal trial (to instill a reasonable doubt) then the burden on him in this civil trial (to prove each element of his case by a preponderance of evidence). As far as practicable, the issues will now be tried *de novo*.

The parties have stipulated that the criminal prosecution ended in a "favorable termination" for the plaintiff. This may be stated to the jury. It may also be necessary to refer to the plaintiff's federal criminal trial to elicit evidence that the defendants provided sworn testimony against the plaintiff in those proceedings, or to properly impeach a witness (should there arise a material discrepancy with prior testimony). For such limited purposes, the term a "prior legal proceeding" may be used.

## IV. Evidentiary Issues

The parties have raised a number of evidentiary matters *in limine*. Primarily on Rule 403 grounds, and for other reasons stated orally at the *in limine* hearing, the following preliminary rulings are made. They are subject to revision in the light of trial developments.

Defendants' motion to preclude any reference to defense counsel as employees of the City of New York or "City attorneys" is granted. No reference to defense counsel as "the City" or suggestion that the City may indemnify Defendants shall be made.

Defendants' motion to preclude inquiry into the defendants' disciplinary histories and the contents of their personnel files is granted.

Defendants' motion to preclude plaintiff from requesting a specific dollar amount from the jury is granted.

It is the plaintiff's theory that personal animosity between Davis and Terrell Norman led Norman to cooperate with the defendant police officers in trumping up the evidence in the criminal case. Defendants' motion that the plaintiff should not be permitted to introduce any evidence regarding Terrell Norman is denied. The parties shall submit further briefing on the admissibility of out-of-court statements purportedly made by Norman before trial. Norman's criminal history is excluded unless he appears as a witness.

Defendants' motion to preclude one Shakima Jones from testifying that she saw what could have been a check from the City of New York to Norman, implying that Norman was a paid police informant, is granted.

Defendants' motion to preclude the plaintiff from arguing or eliciting testimony regarding a purported "Blue Wall of Silence" or "Code of Silence" within the New York Police Department is granted.

Defendants' motion to preclude the plaintiff from arguing or eliciting testimony that Defendants could have conducted a more thorough investigation prior to making an arrest is denied. Defendants may amend their Witness List to address whether State authorities acted reasonably in failing to dust the recovered gun for fingerprints.

6

Defendants' motion to preclude Plaintiff from arguing or eliciting testimony regarding other instances of alleged general police misconduct or misconduct of Defendants is granted.

Plaintiff's motion to preclude the defendants from eliciting evidence regarding the plaintiff's criminal history is granted on Rule 403 grounds. Because of the special circumstances of this case, this evidence carries a high risk of excessive prejudice. Given the facts and circumstances of Plaintiff's October 2009 arrest it is of limited probative value in assessing Plaintiff's credibility.

Plaintiff's motion to exclude the proffered testimony of Assistant United States Attorney Amanda Hector, on why she proceeded with the prosecution in the federal criminal case, is granted on Rule 403 grounds. Evidence that the government investigated whether Terrell Norman—claimed by Plaintiff to have cooperated with the police to trump up the case against him—was a registered New York Police Department informant carries a substantial risk of "confusing the issues"; such testimony has limited probative value in assessing whether Defendants misrepresented the true provenance of the recovered gun and crack cocaine.

Plaintiff's motion to preclude Defendants from arguing or eliciting testimony that the plaintiff's arrest took place in a "high crime area" is granted.

Plaintiff's motion to exclude the "Command Log" ("Gov. Ex. G"), listing property recovered from the plaintiff the night of his arrest, is denied. Defendants shall provide the plaintiff and the Court with a typed reproduction of the Exhibit, now virtually unreadable, as soon as practicable.

## V.  Trial

The jury having been selected, the trial shall commence at 10:00 a.m. on December 9, 2013. The parties and their attorneys shall meet with the court on each trial day at 9:30 a.m. to

7

take up matters which may require decisions from the court on that day. Briefs on these issues shall be filed by 8:00 a.m. on each trial day. Side-bars are strongly discouraged.

SO ORDERED:

Jack B. Weinstein
Senior United States District Judge

Dated: December 4, 2013
      Brooklyn, New York